UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Timothy Garner, individually and on behalf of similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>Bumble Inc., et al.,<br><br>Defendants. | Case No. 3:21-cv-50457<br><br>Honorable Iain D. Johnston |

**MEMORANDUM OPINION AND ORDER**

Badoo is a mobile dating application with millions of users worldwide and hundreds of thousands of users in Illinois. Dkt. 56 ¶ 27; Dkt. 74, at 1. From 2017 to 2019, Badoo offered a feature called "Lookalikes" that used automated facial recognition technology to find potential partners that matched pictures of celebrities or other romantic interests. Dkt. 56 ¶ 28; Dkt. 69-1, at 3, 14 n.6. As part of this feature, Badoo obtained facial biometric information from photos uploaded by Badoo users or photos of Badoo users' Facebook friends. Dkt. 56 ¶¶ 29, 31. Plaintiff Timothy Garner brings this case individually and on behalf of a putative class under the Biometric Information Privacy Act (BIPA). Dkt. 74, at 2-3. Mr. Garner alleges that Badoo scanned and obtained his facial geometry after the Lookalikes feature was launched without notification and without consent, in violation of BIPA. Dkt. 56 ¶¶ 39-40.

Mr. Garner originally filed this action against Defendants Buzz Bidco LLC and Buzz Finco LLC in the Circuit Court of the Seventeenth Judicial Circuit,

1

Winnebago County, Illinois. Dkt. 1-1. Buzz Finco LLC and Buzz Bidco LLC removed the case to this Court, invoking federal jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d). Dkt. 1. Buzz Bidco LLC and Buzz Finco LLC then moved to dismiss the action for lack of personal jurisdiction on February 15, 2022. Dkt. 24. On March 18, 2022, Mr. Garner moved to conduct limited jurisdictional discovery, Dkt. 29, which the Court granted on May 26, 2022, Dkt. 37. Because it granted discovery, the Court struck the pending motion to dismiss. Dkt. 38. After discovery had completed, Buzz Finco LLC and Buzz Bidco LLC filed a second motion to dismiss on October 14, 2022. Dkt. 51.

Mr. Garner filed his first amended complaint on November 16, 2022, adding ten new Defendants: Defendants Bumble Inc., Buzz Holdings LP, Buzz Intermediate LLC, Bumble IP Holdco LLC, Bumble Holding Limited, Badoo Limited, Badoo Trading Limited, Badoo Software Limited, Badoo Technologies Limited, and Greysom Limited. Dkt. 56. Of the now twelve Defendants (collectively "Bumble"), six are holding companies that are incorporated in Delaware: Bumble Inc., Buzz Holdings LP, Buzz Intermediate LLC, Buzz Bidco LLC, Buzz Finco LLC, Bumble IP Holdco LLC (the "Holding Company Defendants"). Dkt. 69-1, at 4. The other six Defendants are incorporated in either Cyprus or the United Kingdom: Bumble Holding Limited, Badoo Limited, Badoo Trading Limited, Badoo Software Limited, Badoo Technologies Limited, and Greysom Limited (the "Foreign Defendants"). Dkt. 69-1, at 3-5. In adding the Foreign Defendants to this action, Mr.

2

Garner sent a process server to the Texas residence of Christopher Rosas, who is a corporate director for each of the Foreign Defendants. Dkt. 69-1, at 2; Dkt. 69-3 ¶ 7.

Bumble now moves to dismiss this action for lack of personal jurisdiction for all Defendants and for insufficient service of process for the Foreign Defendants. For the reasons explained below, the Court holds that service of process was insufficient for the Foreign Defendants and that the Court lacks personal jurisdiction in this action over the Holding Company Defendants.

## ANALYSIS

**Service of Process**

"[V]alid service of process is necessary in order to assert personal jurisdiction over a defendant." *Mid-Continent Wood Prods., Inc. v. Harris*, 936 F.2d 297, 301 (7th Cir. 1991); *see also Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987). Without personal jurisdiction, a court is powerless over the defendant. *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999). Federal Rule of Civil Procedure 4 controls service of process in federal court. *See* Fed. R. Civ. P. 4. A plaintiff "must comply with the directives" of Rule 4 regardless of whether the defendant has "actual notice" of the lawsuit. *McMasters v. United States*, 260 F.3d 814, 817 (7th Cir. 2001). Rule 4(h) controls service of process for corporations; Rule 4(h)(1) controls service of process that takes place within a U.S. judicial district. *See* Fed. R. Civ. P. 4(h). Under Rule 4(h)(1), service may be effected through the methods available for serving individuals or through service on an officer or agent of the corporation. *Id.* 4(h)(1)(A)-(B).

3

In this case, both parties agree that the Foreign Defendants are corporations *See* Dkt. 69, at 6; Dkt. 74, at 18. Service on Mr. Rosas took place at his home in Texas, which is within a U.S. judicial district. *See* Dkt. 69, at 6. Mr. Rosas wasn't a registered agent authorized to accept service on behalf of any of the Foreign Defendants, nor does he serve as an officer to any of them. Dkt. 69-3 ¶¶ 6, 10. He serves as a director for each of the Foreign Defendants, Dkt. 69-3 ¶ 7, so the question is whether he was authorized, as a corporate director of the Foreign Defendants, to accept service as a matter of law.

**Rule 4(h)(1)(A)**

Under Rule 4(h)(1)(A), the methods for serving individuals under Rule 4(e)(1) can be used to serve a domestic or foreign corporation. Fed. R. Civ. P. 4(h)(1)(A). Rule 4(e)(1) allows for service under the law of the state where the court is located (Illinois) or the state where service is made (Texas). *See id.* 4(e)(1). Neither Illinois nor Texas permits serving a corporate director to serve a corporation.

Under Illinois law, "[a] private corporation may be served (1) by leaving a copy of the process with its registered agent or any officer or agent of the corporation found anywhere in the State; or (2) in any other manner now or hereafter permitted by law." 735 ILCS 5/2-204. A "director" does not count as an "agent" or "officer" for service of process. *Sarelas v. Fagerburg*, 45 N.E.2d 690, 695 (Ill. App. Ct. 1942); *Radiant Burners, Inc. v. Am. Gas Ass'n*, No. 57 C 1167, 1958 U.S. Dist. LEXIS 4198, at *2 (N.D. Ill. May 9, 1958); *see also Salon Grp., Inc. v. Salberg*, 156 F. Supp. 2d 872 (N.D. Ill. 2001) (finding no further case law on the

4

issue). Mr. Garner does not refute Bumble's argument that service was improper under Illinois law.[1]

Under Texas law, the Texas Business Organizations Code lists who counts as an agent for service of process. *See* Tex. Bus. Orgs. Code § 5.255 (West 2023). For corporations, "the president and each vice president of a domestic or foreign corporation is an agent of that corporation." *Id.* § 5.255(1). Mr. Garner argues that the Texas code also allows service on "governing person[s]," citing the language in § 5.255(4). However, § 5.255(4) is for "a domestic or foreign entity, *other than an entity listed in Subdivisions (1)—(3)*"; that is, § 5.255(4) applies to entities *other than* corporations, partnerships, and limited liability companies. *Id.* § 5.255(1)-(4) (emphasis added). So, according to the text, a "governing person" is not authorized to receive service for a corporation.

Mr. Garner cites to *RMS Residential Properties, LLC v. Molina*, where the Texas Appellate Court found that a person signing a document as "managing agent" did not establish that person as authorized to receive service. No. 14-11-00232-CV, 2011 Tex. App. LEXIS 8772, at *5 (Tex. App. Nov. 3, 2011). *RMS* combined § 5.255(1) and (4) in its statement of Texas law and suggested that a director could be a "governing person," but that statement had no bearing on the court's decision. *Id.* The court did not reconcile its interpretation with the Texas code's language "other than an entity listed in Subdivisions (1)—(3)," nor did it cite to any authority

---

[1] In arguing that service was proper under the federal portion of Rule 4, Mr. Garner cites to a case that interprets Illinois law, but that case does not support service on a director of a corporation under Illinois law. *See infra.*

5

to support that interpretation. *See id.* The plain language of the Texas code excludes "governing person" from corporations, and this Court did not find any binding authority where a court permitted service on a "governing person" for a corporation.[2]

Bumble cites examples of Texas courts rejecting service on other corporate officers or employees under Texas law. Dkt. 69-1, at 7; *see, e.g.*, *Alamo 1 Specialized Trucking, Inc. v. Bay Crane Servs. of N.J., Inc.*, No. 18-cv-386, 2018 U.S. Dist. LEXIS 231329, at *3-4 (W.D. Tex. July 27, 2018) (citing cases where service on a manager, administrator, and bookkeeper were ineffective). Although none directly address the question of whether a director can be served, these cases further support the conclusion that service on corporations under Texas law is limited to the individuals listed in the Texas code.

**Rule 4(h)(1)(B)**

Rule 4(h)(1)(B) provides an additional method for serving a corporation—by serving "an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(h)(1)(B). Bumble argues that this does not include a director, Dkt. 69, at 6, whereas Mr. Garner argues that a director can count as "a managing or general agent." Dkt. 74,

---

[2] There was one other unpublished case that treated § 5.255(4) in a similar way, this time combining it with § 5.255(3) for service of process on a limited liability company. *Moore v. Payson Petrol. Grayson, LLC*, No. 17-cv-1436, 2017 U.S. Dist. LEXIS 237516, at *4-5 (N.D. Tex. August 23, 2017). However, like *RMS*, that interpretation of Texas law had no bearing on the outcome of the case because the person who had been served was the founder and chief executive officer of the company and a registered agent. *Id.* at *2-3. The opinion also did not reconcile its interpretation with the plain language of § 5.255(4) or cite to supporting authority. *Id.* at *4-5.

6

at 19. The Court agrees with Bumble that Rule 4(h)(1)(B)'s language does not include a corporate director.

"A managing agent is one authorized to transact all business of a particular kind at a particular place, and must be vested with powers of discretion rather than under direct superior control." 1 James Wm. Moore et al., *Moore's Federal Practice – Civil* § 4.53[b] (3d ed. 2023); 62B Am. Jur. 2d *Process* § 230 (2023); *see also Bridgeport Music, Inc. v. Rhyme Syndicate Music*, 376 F.3d 615, 624 (6th Cir. 2004); *Grammenos v. Lemos*, 457 F.2d 1067, 1073 (2d Cir. 1972). A director of a corporation does not generally have the authority to individually act on behalf of the corporation, unless authorized by the board of directors. *See* 2 William Meade Fletcher, *Fletcher Cyclopedia of the Law of Corporations* § 505 (perm. ed. 2023) ("A corporation does not act through its individual directors, but rather through its board of directors as a whole."). "[S]ervice of process upon a mere director who is found within the district but who neither transacts any corporate business nor is charged with any business of the corporation generally is not sufficient service upon the corporation." 18A Fletcher, *supra*, § 8751.

Moreover, language in other parts of the Federal Rules of Civil Procedure also supports the interpretation that a director is distinct from an officer and from a managing or general agent. Rule 30(b)(6) instructs an organization that has been noticed or subpoenaed to "designate one or more officers, directors, or managing agents," and Rule 37 uses the language "a party's officer, director, or managing agent" in describing discovery sanctions. Fed. R. Civ. P. 30(b)(6), 37(b)(2)(A),

7

37(d)(1)(A). It would be redundant to list "director" separately in these other rules if an "officer" or "managing agent" included a director. To avoid rendering "director" unnecessary across the federal rules, it makes more sense to read "director" as distinct from "officer" or "managing agent." *See Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 386 (2013) ("[T]he canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme.").

Mr. Garner argues that Mr. Rosas counts as a managing agent for two reasons. First, Mr. Garner argues that Mr. Rosas' responsibilities and knowledge of the Foreign Defendants makes him a managing agent. However, Mr. Garner cites Mr. Rosas' involvement in "global tax, treasury and transfer pricing matters," which relates to his role as Vice President of Tax and Treasury of the Holding Company Defendants. Dkt. 74, at 19; Dkt. 69-3 ¶ 2. His responsibilities for the Foreign Defendants involve approving documents and decisions, not managing the actual business transactions. Dkt. 69-3 ¶ 8. Service on Mr. Rosas doesn't seem to fall within the Rule 4's "managing or general agent." *See* 18A Fletcher, *supra*, § 8751.

Second, Mr. Garner argues that whether a person is authorized to receive service depends on whether the defendant will receive notice of the case. Dkt. 74, at 19. However, it is "well recognized" that actual notice of litigation is "insufficient to satisfy Rule 4's requirements." *Mid-Continent Wood Products*, 936 F.2d at 301; *see also McMasters* 260 F.3d at 817. Although Mr. Rosas could and did inform the Foreign Defendants of the lawsuit, that alone does not make service proper.

8

The case that Mr. Garner cites for the proposition that notice is sufficient, *PolyOne Corp. v. Lu*, dealt with a company arguing that a person who was a director, a founder, and the technology vice president was not an officer. No. 14-cv-10369, 2015 U.S. Dist. LEXIS 82809, at *6 (N.D. Ill. June 25, 2015). *PolyOne* used that person's role as a founder and technology vice president to find that service was proper, but Mr. Garner relies on a rule statement that *PolyOne* uses for both Rule 4(h)(1)(B) and Illinois law: "[w]hether someone fits the roles at issue comes down to whether 'it is reasonable to assume that he or she will transmit notice of the commencement of an action to his or her superiors.'" *Id.* at *6-7 (quoting 62B Am. Jur. 2d *Process* § 246 (2015) (now § 230)); *see* Dkt. 74, at 19. However, *PolyOne* takes the underlying quote out of context; the full sentence in *American Jurisprudence* reads, "A person not in charge of a corporation's activities within a state *may* still qualify as a general or managing agent if his or her position is one of sufficient responsibility so that it is reasonable to assume that [notice will be transmitted]." 62B Am. Jur. 2d *Process* § 230 (2023) (emphasis added) (citing examples in Pennsylvania and Iowa). The fuller inquiry looks at the responsibilities of a person's position, and this is one way that a person *may* be a managing or general agent—it's still not just a matter of whether the person would notify the defendant. And *PolyOne*'s reliance on Illinois case law[3] is not instructive of Rule

---

[3] *PolyOne* depended on two Illinois state court cases that Mr. Garner also cites. *See* 2015 U.S. Dist. LEXIS 82809, at *7; Dkt. 74, at 19. *People v. Beaulieu Realtors, Inc.* found that a receptionist or secretary "ha[s] authority to receive notice and would be likely to inform the corporation of the service." 494 N.E.2d 504, 507 (Ill. App. Ct. 1986). *United Bank of Loves Park v. Dohm* concerned a clerk of a bank's customer services department whose "normal duties" included accepting service of process and who "had been authorized by and on behalf of the bank to accept process." 450 N.E.2d 947, 978 (Ill. App. Ct. 1983). Mr. Rosas was not authorized to accept service of process on behalf of

9

4(h)(1)(B) because, unlike subsection (A), subsection (B) does not incorporate state law. *See* Fed. R. Civ. P. 4(h)(1). Absent binding authority, this Court does not find that the rules of service to allow service on anyone who would be reasonably likely to notify the defendant.

**Personal Jurisdiction**

Because service of process was improper for the Foreign Defendants, the Court is not addressing whether it otherwise has personal jurisdiction over the Foreign Defendants. The question of personal jurisdiction remains for only the six Holding Company Defendants for whom personal service is unchallenged: Bumble Inc., Buzz Holdings LP, Buzz Intermediate LLP, Buzz Bidco LLC, Buzz Finco LLC, and Bumble IP Holdco LLC.

When a defendant moves to dismiss under Rule 12(b)(2), the plaintiff has the burden of establishing personal jurisdiction. *Curry v. Revolution Lab'ys, LLC*, 949 F.3d 385, 392 (7th Cir. 2020); *Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). "The precise nature of the plaintiff's burden depends upon whether an evidentiary hearing has been held." *Curry*, 949 F.3d at 392 (quoting *Purdue*, 338 F.3d at 782). If there is no evidentiary hearing, as it is in this case, the plaintiff's burden is to make a prima facie case for personal jurisdiction. *Id.* at 392-93. The Court may consider affidavits that have been submitted. *Id.* at 393. Both parties' affidavits are accepted as true, but factual disputes are resolved

---

the foreign defendants nor did his duties include doing so Dkt. 69-3 ¶¶ 8, 10, so neither underlying case applies in this case even in the context of service under Illinois law.

10

in the plaintiff's favor. *Id.*; *NBA Props. v. HANWJH*, 46 F.4th 614, 620 (7th Cir. 2022).

Both Illinois law and the federal Constitution govern whether the Court can exercise personal jurisdiction over a defendant. *Rogers v. City of Hobart*, 996 F.3d 812, 818 (7th Cir. 2021). The Illinois long-arm statute extends as far as the Constitution permits, 735 ILCS 5/2-209(c), so the question is whether federal due process permits exercising personal jurisdiction. *Rogers*, 996 F.3d at 818. There are two kinds of personal jurisdiction: general and specific. *Id.* (citing *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021)).

### General Jurisdiction

A court may exercise general jurisdiction over a defendant that is "essentially at home" in the forum state. *Ford*, 141 S. Ct. at 1024. A corporation is "at home" in its place of incorporation and principal place of business. *Id.* (citing *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014)). The Holding Company Defendants are incorporated in Delaware, and their principal places of business are in Texas. *See* Dkt. 69, at 12. Mr. Garner does not allege any basis for general jurisdiction, *see* Dkt. 74, at 8, so the Court does not have general personal jurisdiction over the Holding Company Defendants.

### Specific Jurisdiction

A court may exercise specific jurisdiction over a defendant based on its contacts with the forum state. *Ford*, 141 S. Ct. at 1024-25. Specific jurisdiction requires that the defendant "has purposefully directed [its] activities at the forum

11

state or purposefully availed [itself] of the privilege of conducting business in the state" and that "the alleged injury arises out of or relates to the defendant's forum-related activities." *Rogers*, 996 F.3d at 819. Each defendant must have these purposefully established minimum contacts. *Tamburo v. Dworkin*, 601 F.3d 693, 701 (7th Cir. 2010); *see also Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984). There are still "real limits" to the phrase "relate to" in determining whether the alleged injury relates to the defendant's forum-related contacts. *Ford*, 141 S. Ct. at 1026. In addition, exercising jurisdiction "must comport with traditional notions of fair play and substantial justice." *Rogers*, 996 F.3d at 819.

For the reasons explained below, the Court finds that it does not have specific personal jurisdiction over any of the Holding Company Defendants, either through their individual contacts or through an "alter ego" theory.

**Bumble Inc.**

According to Bumble, Bumble Inc. is a holding company that conducts no business and has no employees. Dkt. 69-1, at 4. As a holding company with no business in Illinois, it has not purposefully availed itself of Illinois and is not subject to specific jurisdiction in this Court. *See Sotelo v. DirectRevenue, LLC*, 384 F. Supp. 2d 1219, 1226 (N.D. Ill. 2005); *Androphy v. Smith & Nephew, Inc.*, 31 F. Supp. 2d 620, 622 (N.D. Ill. 1998).

Mr. Garner argues that Bumble Inc. is more than just "a benign holding company that essentially does nothing" by citing to some specific excerpts in Bumble Inc.'s annual report (Form 10-K). Dkt. 74, at 11. First, Mr. Garner notes

12

that Bumble Inc. operates and controls Buzz Holdings LP, Dkt. 74-1, at 2, 87, but Mr. Garner fails to connect the operation of Buzz Holdings to the operations of Badoo. *See infra.* Second, Mr. Garner argues that the annual report shows Bumble Inc. accesses and uses Badoo user data, quoting statements like "[w]e regularly review metrics, including our Bumble App Paying Users, Badoo App and other Paying Users . . . to evaluate growth trends, measure our performance, and make strategic decisions" and "we operated [the] Badoo app." Dkt. 74, at 11. But, as Bumble notes in its reply, the use of "we" and "the Company" refer collectively to "Bumble Inc. and its consolidated subsidiaries." Dkt. 74-1 at 3; Dkt. 79, at 8.

Bumble's affidavits that Bumble Inc. is not involved in operating or marketing Badoo and the annual report's statements that "Bumble Inc. and its consolidated subsidiaries" operate the Badoo app do not present a factual conflict: together, these documents show that (some of) Bumble Inc.'s subsidiaries operate the Badoo app while Bumble Inc. is a parent company that is a holding company. Moreover, attributing to Bumble, Inc. the actions of its many subsidiaries is akin to an argument about alter ego liability, discussed later in this order and, in any event, not typically accepted as sufficient for establishing specific jurisdiction when based on language that refers to the entities collectively. *E.g.*, *Gruca v. Alpha Therapeutic Corp.*, 19 F. Supp. 2d 862, 867 (N.D. Ill. 1998) (finding that references in a corporation's annual report to "*our* international marketing efforts" and "*our* marketing position" did not overcome the parent and subsidiary's separate identities); *cf., e.g.*, *Lasalle Nat'l Bank v. Vitro*, 85 F. Supp. 2d 857, 865 (N.D. Ill.

13

2000) ("Personal jurisdiction is based on actual evidence of control . . . rather than on a corporation's general descriptions [on a website].").

Mr. Garner also cites *Chien v. Bumble Inc.*, which found that Bumble Inc. was involved in operating the Bumble app, another one of Bumble's dating applications. *See* Dkt. 74, at 12; Dkt. 79, at 8. Although *Chien* found that Bumble Inc. had purposely directed its activities toward California as part of its role in the Bumble app, the court relied on not only an SEC filing, but also a declaration from the chief of staff for Bumble Trading, Inc., that addressed specifically Bumble Inc.'s involvement. No. 22-cv-00020, 2022 U.S. Dist. LEXIS 211096, at *27 (S.D. Cal. Nov. 17, 2022). Contrast that with this case, where Mr. Garner hasn't presented similar language of specifically "Bumble Inc." operating or marketing the Badoo app, just "Bumble Inc. and its consolidated subsidiaries."

### Buzz Finco LLC, Buzz Bidco LLC, Buzz Holdings LP, and Buzz Intermediate LLC

These four entities—Buzz Finco LLC, Buzz Bidco LLC, Buzz Holdings LP, and Buzz Intermediate LLC—are not involved in the design, marketing, or operation of the Badoo app. Dkt. 74, at 17; *see also* Dkt. 69-1, at 4. The Court has before it no evidence that they conduct business anywhere, nor that they have any employees. Dkt. 69-1, at 4. Like Bumble, Inc., a holding company with no business in Illinois, these four entities have not purposefully availed themselves of Illinois and are also not subject to specific jurisdiction in this Court. *See Sotelo, LLC*, 384 F.

14

Supp. 2d at 1226; *Androphy*, 31 F. Supp. 2d at 622. Mr. Garner's remaining arguments for these four entities relate to the alter ego issue. *See infra*.

### Bumble IP Holdco LLC

Regarding Bumble IP Holdco LLC, Bumble contends that this entity did not exist until after the "Lookalikes" feature had ended. Dkt. 69, at 14 n.6 (noting that Bumble IP Holdco LLC was formed in October 2020, nearly a year after the "Lookalikes" feature's availability had ended in November 2019); Mr. Garner does not refute this. Assume, for the sake of argument, that Mr. Garner is correct in Bumble IP Holdco LLC's involvement in the operation of the Badoo app because it has an ownership interest in the Badoo app and receives research and development services from Badoo Limited (which operates and markets the app). Dkt. 74, at 12. That still doesn't provide Bumble IP Holdco LLC with contacts that *relate to* the "Lookalikes" feature at the heart of Mr. Garner's claims. At the time that Badoo allegedly collected biometric information for the "Lookalikes" feature, Bumble IP Holdco LLC had nothing to do with Badoo (because the entity did not yet exist), and so Bumble IP Holdco LLC's conduct did not purposefully avail itself of Illinois.

### Alter Ego

With corporations in a parent-subsidiary relationship, the general rule is that "the jurisdictional contacts of a subsidiary corporation are not imputed to the parent." *Purdue*, 338 F.3d at 778 n.17. "[C]orporate affiliation or stock ownership alone" is not enough. *Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 943 (7th Cir. 2000). Imputation requires an "unusually

15

high degree of control" or that the subsidiary's existence "is simply a formality." *Abelesz v. OTP Bank*, 692 F.3d 638, 658-59 (7th Cir. 2012) (quoting *Purdue*, 338 F.3d at 778 n.17). This "alter ego" test is a similar inquiry to the test used to determine whether to pierce the veil for corporate liability. *Taurus IP, LLC v. DaimlerChrysler Corp.*, 519 F. Supp. 2d 905, 919 (W.D. Wis. 2007) (citing *IDS Life Ins. Co. v. SunAmerica Life Ins. Co.*, 136 F.3d 537, 540 (7th Cir. 1998)); *Torco Oil Co. v. Innovative Thermal Corp.*, 730 F. Supp. 126, 136 (N.D. Ill. 1989); *see also Ranza v. Nike, Inc.*, 793 F.3d 1059, 1071 (9th Cir. 2015). However, the alter ego test asks only "whether the corporation is real or a shell," rather than requiring fraudulent behavior. *Torco*, 730 F. Supp. at 136.

Both sides rely on Illinois law in their alter ego arguments. *See* Dkt. 69-1, at 23-24; Dkt. 74, at 17.[4] Under Illinois law, the alter ego theory requires "such unity of interest and ownership that the separate personalities [of the corporations] no longer exist" and circumstances "such that adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice." *Great Lakes Overseas v. Wah Kwong Shipping Grp.*, 990 F.2d 990, 996 (7th Cir. 1993) (alterations in original). In determining "unity of interest and ownership" and whether the degree of control is high enough to treat corporations as one, Illinois courts consider factors such as "(1) the failure to maintain adequate corporate

---

[4] Under Illinois choice-of-law rules, the law of the state of incorporation would typically govern the alter ego issue, but because both sides rely on Illinois law in their alter ego arguments, the Court will apply Illinois law in this case. *See Joiner v. Ryder Sys.*, 966 F. Supp. 1478, 1482-83 (C.D. Ill. 1996) ("[S]ince both parties assume [without discussing] that Illinois law applies to the alter ego issue, the Court will not disturb that assumption, nor will it hold otherwise." (first citing *Vukadinovich v. McCarthy*, 59 F.3d 58, 62 (7th Cir. 1995); and then citing *Wood v. Mid-Valley, Inc.*, 942 F.2d 425, 426-27 (7th Cir. 1991)).

16

records or to comply with corporate formalities, (2) the commingling of funds or assets, (3) undercapitalization, and (4) one corporation treating the assets of another corporation as its own." *Van Dorn Co. v. Future Chem. & Oil Corp.*, 753 F.2d 565, 570 (7th Cir. 1985); *see also Great Lakes*, 990 F.2d at 997.

Because Mr. Garner failed to present any jurisdictional contacts for the Holding Company Defendants, the alter ego question is limited to whether the contacts of the Foreign Defendants can be imputed to any of the Holding Company Defendants. Mr. Garner also does not allege any facts specific to Bumble IP Holdco LLC for the alter ego issue. The remaining Holding Company Defendants (Bumble Inc., Buzz Finco LLC, Buzz Bidco LLC, Buzz Holdings LP, and Buzz Intermediate LLC) sit above the Foreign Defendants in the organizational hierarchy. Dkt. 69, at 23.

Mr. Garner has not established that the remaining Holding Company Defendants are alter egos of the Foreign Defendants. They all appear to operate as distinct corporate entities. The Holding Company and Foreign Defendants maintain separate corporate books, records, finances, and tax returns, and they hold their own formal meetings. Dkt. 69-2 ¶ 14; Dkt. 69-3 ¶ 19; *see Cent. States*, 230 F.3d at 945 (finding that the subsidiary "maintained separate books, records, financial statements, and tax returns" and "observ[ed] all corporate formalities"); *Great Lakes*, 990 F.2d at 997. The Holding Company Defendants also don't control the day-to-day operations of the Foreign Defendants. Dkt. 69-2 ¶ 15; Dkt. 69-3 ¶ 18; *see Cent. States*, 230 F.3d at 945 (finding that the parent corporations did not exercise

"day-to-day management control" over the subsidiary). Although some corporate filings described "Bumble stakeholder interests" as "managed at a global level," Dkt. 74, at 4 (emphasis omitted), that does not suggest control over the operations of the Foreign Defendants. *See Cent. States*, 230 F.3d at 943; *Evans v. Wright Med. Tech., Inc.*, No. 19-cv-00160, 2019 U.S. Dist. LEXIS 182422, at *16-17 (N.D. Ind. Oct. 21, 2019) (finding that SEC filings describing "a global operation" was "not supportive of corporate piercing").

Mr. Garner points to Badoo Limited and Badoo Trading Limited's corporate filings to argue that these Defendants commingle funds and data. He argues that Bumble Inc.'s "funding guarantees" to Badoo Limited and Badoo Trading Limited show a disregard of the Bumble organizational tree (with other subsidiaries in below Bumble Inc. but above Badoo Limited and Badoo Trading Limited) and a commingling of funds. Dkt. 74, at 17. Commingling funds suggests some impropriety with the management of bank accounts that blurs the lines between the entities. *See, e.g.*, *Teamsters Loc. Union No. 727 Pension Fund v. Cap. Parking, LLC*, No. 19-cv-837, 2019 U.S. Dist. LEXIS 202669, at *9 (N.D. Ill. Nov. 21, 2019) (collecting cases). In contrast, Bumble Inc. provided "letter[s] of support" to the two subsidiaries that stated an intent to back Badoo Limited and Badoo Trading Limited. Dkt. 74-3 at 8; Dkt. 74-4 at 8. This doesn't look like a use of funds that disregards the entities' separate identities, especially given that the various entities observe corporate formalities and do not control each other's operations. *See Cent.*

*States*, 230 F.3d at 943-44 (finding that "corporate affiliation or stock ownership alone" is not enough for personal jurisdiction).

As for commingling data, which could perhaps be characterized as commingling assets, Mr. Garner discusses the lack of data transfer agreements "between Bumble Trading LLC and the subsidiaries who Defendants have identified as handling Badoo user information," Dkt. 74, at 17. Of those listed as handling Badoo user information, the ones that are defendants in this case are Greysom Limited, Badoo Technologies Limited, Badoo Limited, and Badoo Trading Limited. *See* Dkt. 74-5, at 4. Those four are all entities that were not properly served, and Bumble Trading LLC is not a defendant in this case. Even viewing this in the light most favorable to Mr. Garner, this supports at most a commingling of data among the entities that operate the Badoo app. The Holding Company Defendants, however, are not among those that operate the app. Dkt. 69-1, at 4.

Lastly, on whether treating the Holding Company Defendants as separate entities would "would sanction a fraud or promote injustice," *Great Lakes*, 990 F.2d at 996, Mr. Garner appeals to equitable considerations and argues that it would be unfair for Bumble to use its corporate structure to avoid facing liability in Illinois. Dkt. 74, at 18. However, the conclusion that the Foreign Defendants' jurisdictional contacts cannot be imputed to the Holding Company Defendants does not foreclose the possibility of personal jurisdiction over the Foreign Defendants, so the failure to find that the Holding Company Defendants act as alter egos of the Foreign

19

Defendants does not mean that no part of Bumble Inc. and its subsidiaries is reachable.

## CONCLUSION

The motion to dismiss is granted for insufficient service of process for Badoo Limited, Badoo Trading Limited, Bumble Holding Limited, Badoo Software Limited, Badoo Technologies Limited, and Greysom Limited, and for lack of personal jurisdiction over Bumble Inc., Buzz Finco LLC, Buzz Bidco LLC, Buzz Holdings LP, Buzz Intermediate LLC, and Bumble IP Holdco LLC. This case is dismissed without prejudice.

Date: September 18, 2023

_____
Honorable Iain D. Johnston
United States District Judge